**PRODUCERS OIL & GAS CO., Inc. v. ARKANSAS LOUISIANA GAS CO.**

No. 9073.

Circuit Court of Appeals, Fifth Circuit.

July 6, 1939.

Frank M. Cook, Sidney M. Cook, and Charles D. Egan, all of Shreveport, La., for appellants.

Elias Goldstein and Robert Roberts, Jr., both of Shreveport, La., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

## HUTCHESON, Circuit Judge.

What is in question here, is the construction and application of a clause in a drilling contract, providing for certain payments and interests, if the well appellants contracted to drill should be drilled to a depth of 4,250 feet, or if the same should be completed as a paying oil and gas well, below 3,500 feet. No claim was made below, none is made here, that the well was drilled to a depth of 4,250 feet. The claim appellants unsuccessfully urged below and reurge here, is, that within the meaning of the contract, the well in controversy, was completed as a paying oil and gas well below 3,500 feet. Except as to what the contract means by a well "completed as a paying oil and gas well below 3500 feet," and except as to the depth from which the gas being produced by the well is coming, the parties are in agreement. The controversy raged below, and rages here, first, over the meaning of the clause, and secondly, over the state of the proof as to whether the gas is or is not, coming from a greater depth than 3,500 feet.

Upon a full hearing, the District Judge found "the gas well was completed at a depth less than 3,500 feet: it was then producing and has since produced, gas from a depth less than 3,500 feet." He therefore, denied plaintiffs the relief they asked, based on their contention that the well was completed as a paying gas well below 3,500 feet. Here, appellants complain of this finding as not only without support in, but as completely contrary to, the credible evidence in the case. Pointing to testimony in the record, that at 3,850 feet 7½" casing was set, and the well was drilled on down, open hole, to a depth of from 3,970 feet to 3,975 feet, at which time it blew out; that after the blowout between 3,970-75 feet, the hole caved in or bridged at varying depths, the main bridge or cavein occurring at 3,600 feet; that the well ceased to produce gas when this cavein occurred, but when that bridge was drilled out, the well resumed production; that tests were made from 2,846 feet to 3,211 feet, without any showing of gas worthy of notice, appellants insist that no other reasonable conclusion can be drawn from it, than that the gas coming from the well is coming from a depth below 3,500 feet. Pointing on its part to the record, showing that after the cavein or blowout occurred, a 4½" casing was run into the hole from 2,850 feet down to 3,266 feet, where it got stuck; that unable to go any further, it was decided to cement the 4½" casing at that point; that 100 sacks of cement were placed in the casing, and with a wood block on top of it, was pumped down with mud; that when the cementing plug reached 2,843 feet, it stuck; that it was decided to put on sufficient pressure to pump the block on down, through the 423 feet of cement which was in the 4½" casing; but that this pressure was then so heavily built up, that it caused the 4½" casing to split at just about 2,843 feet, and the well commencing to make dry gas from that point in the casing, the appellants decided to call the well an accidental completion, appellee insists that since the casing ended, and the well was cemented at 3,260 feet, and since the gas coming from it was coming out of the 4½" casing at around 2,843 feet, the depth of the sands from which the gas was coming was immaterial, and the Court was bound to find, as he did, that the well was "completed at a depth less than 3,500 feet, that it was then producing and has since produced, gas at a depth less than 3,500 feet."

It insists, in short, that the contract provided not for the discovery of the existence of a formation below 3,500 feet, but for the completion of a well to that depth, and the production of gas from the depth to which the well was completed; and that since it was undisputed that the well was completed at a depth between 2,800 feet and 3,200 feet, and that the gas being produced from it was produced by the well as completed from that depth, ap-

pellants' case completely failed. It insists, too, that the evidence shows, and the District Judge found, that the parties to the contract further understood and agreed, when the accidental completion was accepted, that the well was completed at less than 3,500 feet, and in securing appellee's acceptance of it as a completion, rather than jeopardize the lease which was about to expire, by further efforts to complete it properly, appellants agreed with appellee that if the well was accepted as a compliance with the contract, it was accepted as one completed above 3,500 feet.[1]

In support of its contention that, though under the contract, the depth of the sands from which the gas is coming is not material, the plaintiffs had not even sustained the burden of showing that the gas was from a stratum below 3,500 feet, they point out; that the well was cemented solidly, for 400 feet below where the gas was coming in, and that their witnesses all testified that gas could not have been produced from below the point where the $4\frac{1}{2}''$ casing stuck; that the pressure of the gas as it came into the well under the established rule relating pressure to depth showed that it was coming from above 3,200 feet; that it was agreed in the testimony that a blowout could have occurred as well from above as from the bottom of an open hole, and that a showing of gas was found in other wells drilled in the field between 2,800 feet and 3,000 feet.

To appellants' claim that appellee has drilled additional wells on the tract, since it took over, and found a gas-producing stratum at a depth below 3,500 feet, appellee replies that none of the wells it drilled produces or has produced gas from the level from which appellants claim that the gas in the well in controversy is coming. In none of the wells appellee drilled was the base of the massive anhydrite, in which no gas is ever found, reached at a less depth than 3,988 feet. In none of them was production found at a higher point than 4,130 feet. In most of them the production was from 4,210 feet and below. The lowest point reached by the well in controversy was around 3,970 feet, and thus it is impossible appellee insists, that the gas

it produces could be coming from the sands below the anhydrite formation from which appellee is producing in the wells it drilled. Appellee points, too, to the testimony that in the Sligo Field, where the well is, lenticular sands of an undefined, superficial area are found at depths from 2800 to 3,200 feet. That at least two wells there have had strong gas shows from 3,100 to 3,200 feet. Appellee insists that all of these undisputed facts considered in the light of appellants' burden of establishing that they had completed the well below 3,500 feet furnish full and complete support to the finding of the court below. We agree with appellee. We think the contract plain and unambiguous. It provides for certain results, if a paying gas well be completed below 3,500 feet; certain others, if it be completed above that depth. No person testifies that this well could be regarded as a well completed below 3,500 feet. All agree that it was not so completed. Indeed, plaintiffs do not claim that it was. All that they claim is, though the well, as a well, was completed above 3,500 feet, this was an accidental completion and the gas which got into it and was being produced by it through a cracked casing reached it through the earth from a stratum far below the point of its completion as a well. Whether the gas bearing stratum which is the source of the gas coming from this well is below or above 3,500 feet, is not material. What is material here is, whether appellants have completed a paying gas well at a depth above or below 3,500 feet, and whether gas is being produced from a well completed above or below that depth. It is perfectly plain that the well was completed, and that it is producing from above 3,500 feet.

But even if we could agree with appellants that the stratum from which the gas is coming and not the depth to which the well was completed is controlling, and that they have offered evidence which would support a finding in their favor on that issue, we could not agree with them that the evidence compels such a conclusion. We must rather find that the evidence reasonably supports the conclusion of the District Judge that the well was then producing,

---

[1] Mr. Costa, for defendant testified, "that before the well was put on production and before we took it over, Mr. Harrell asked specifically that the well be considered as completed above 3,500 feet." The District Judge, in his findings, stated that the evidence preponderates in favor of this contention, but that having found that the well was completed at a depth of less than 3,500 feet, he would not find on the issue of estoppel, this evidence raised.

and has since produced, gas from a depth of less than 3,500 feet.  The judgment was right.  It is affirmed.